UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| JOSEPH RAYMOND PAGETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:05CV00042 ERW |
| | ) |
| ALLIED MUTUAL INSURANCE CO., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court upon Defendant Allied Mutual Insurance Company's Motion for Summary Judgment [doc. #13].

**I.   BACKGROUND FACTS**

On May 4, 2004, Defendant Allied Mutual Insurance Company ("Allied") issued a homeowners policy of insurance ("Policy") to Plaintiff Joseph Pagett ("Plaintiff") and his then-wife, Donna Pagett, on the property located at 13408 Cody Drive, New London, Missouri ("Cody Drive Residence").  The Policy was effective from May 4, 2004 until May 4, 2005.  On July 16, 2004, a fire occurred at the Cody Drive Residence.  After the fire, Plaintiff made a claim under the Policy, seeking to recover insurance proceeds for damages sustained as a result of the fire.  Upon investigating the facts and circumstances surrounding the fire loss, Allied concluded that the fire had been set intentionally by Ms. Pagett, a named insured under the Policy, and denied coverage pursuant to the Policy's Intentional Loss exclusion.

After Allied denied coverage, Plaintiff filed a Petition for Vexatious Refusal against Allied in the Circuit Court of Ralls County, Missouri, alleging that Allied had improperly refused payment of

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

his claim of loss. On July 7, 2005, Allied timely removed the case to this Court on the basis of diversity jurisdiction. On June 9, 2006, Allied filed the instant Motion for Summary Judgment.

**II.    SUMMARY JUDGMENT STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.

If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. "Thus, where the moving party can point to the absence of any evidence satisfying a necessary element of a claim, such as damages, and the non-moving party fails to produce any such evidence, summary judgment is

2

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

properly entered." *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1018 (8th Cir. 2004).

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

**III.    DISCUSSION**

Plaintiff's Complaint consists of a single claim for vexatious refusal to pay against Allied. To establish a claim for vexatious refusal to pay, Plaintiff must prove that: (1) he had an insurance policy with Allied; (2) Allied refused to pay; and (3) Allied's refusal was without reasonable cause or

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

excuse. *Dhyne v. State Farm Fire and Cas. Co.*, 188 S.W.3d 454, 457 (Mo. 2006).[1] "To support a claim of vexatious refusal to pay proceeds of an insurance policy, the insured must show the insurer's refusal to pay is willful and without reasonable cause, as the facts would appear to a reasonable and prudent person." *Mears v. Columbia Mut. Ins. Co.*, 855 S.W.2d 389, 394 (Mo. Ct. App. 1993). A refusal to pay based on a suspicion which is not supported by substantial facts is vexatious. *Id.*

In moving for summary judgment, Allied argues that Plaintiff is unable to establish the third element of his vexatious refusal claim (i.e. that Allied's refusal was without reasonable cause or

---

[1]Plaintiff's claim is based on two Missouri statutes. Under Missouri law:
> In any action, suit or other proceeding instituted against any insurance company, association or other insurer upon any contract of insurance issued or delivered in this state to a resident of this state, or to a corporation incorporated in or authorized to do business in this state, if the insurer has failed or refused for a period of thirty days after due demand therefor prior to the institution of the action, suit or proceeding, to make payment under and in accordance with the terms and provisions of the contract of insurance, and it shall appear from the evidence that the refusal was vexatious and without reasonable cause, the court or jury may, in addition to the amount due under the provisions of the contract of insurance and interest thereon, allow the plaintiff damages for vexatious refusal to pay and attorney's fees as provided in section 375.420. . . .

Mo. Rev. Stat. 375.296. Plaintiff's claim is also based on a second Missouri statute:

> In any action against any insurance company to recover the amount of any loss under a policy of automobile, fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

Mo. Rev. Stat. 375.420.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

excuse). According to Allied, the evidence in this case, even when viewed in the light most favorable to Plaintiff, demonstrates that it did have a reasonable basis for refusing to pay Plaintiff's claim. Specifically, Allied argues that Plaintiff's claim was properly denied pursuant to the Policy's Intentional Loss exclusion, which states:

> A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
> . . . .
>
> 8. Intentional Loss
> Intentional loss means any loss arising out of any act an "insured"[2] commits or conspires to commit with the intent to cause a loss.
>
> In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

Allied's Ex. A.

In support of its contention that it had a reasonable basis for refusing to pay Plaintiff's claim and that there is an absence of evidence to the contrary, Allied presents evidence of Plaintiff's own candid admissions of his belief that the fire was set intentionally by Ms. Pagett, a named insured under the Policy. First, Allied presents Plaintiff's testimony from a December 22, 2004 hearing which took place in the Associate Circuit Court of Ralls County, Missouri, where Plaintiff and Ms. Pagett were

---

[2]Under the Policy:
5. "Insured" means:
    a. You and residents of your household who are:
        1) Your relatives; or
        2) Other persons under the age of 21 and in the care of any person named above . . .

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

before the Court on issues related to their marital dissolution.[3] At that time, Plaintiff testified as follows:

> Q: Yeah. After whatever mortgage that might have been left would be paid. So all of the things being equal, any insurance payment would go half to you and half to her after the mortgage but –
> A: -- I must pay her [Ms. Pagett] for burning it, burning my stuff?
> . . . .
> Q: You have no personal knowledge of – assuming that someone set it – of who set it?
> A: Her. [Ms. Pagett]
> Q: Do you have personal knowledge?
> A: She's [Ms. Pagett has] told me a million times, I'll burn everything you got. You'll never get a Goddamn thing – Excuse me – ever.
> . . . .
> Q: Educated guess aside, you really don't know, do you?
> A: Yeah. She [Ms. Pagett] burnt it. The truth is what the truth is.
> Q: Well, but it may not be what you say it is; is that also a fair statement?
> A: I'd say no, it is what I say it is. There's no doubt in my mind she [Ms. Pagett] burnt that house and it will be proved sooner or later sometime.

Allied's Ex. C, pp. 155-57. Allied also presents testimony given by Plaintiff during a subsequent Examination Under Oath conducted by Allied during its investigation of Plaintiff's insurance claim:

> Q: You said that you – At least at that point in time at the contempt hearing, that was December 22?

---

[3] Plaintiff and Ms. Pagett were divorced by Order of the Circuit Court of Ralls County, Missouri on January 14, 2004. Pursuant to the Judgment of Decree of Dissolution of Marriage, Ms. Pagett received all rights, title, and interest in the Cody Drive Residence, subject to an interest by Plaintiff in $30,000 of the equity. Ms. Pagett was ordered to pay Plaintiff the $30,000 within ninety days of the date of the Judgment and Decree. On June 29, 2004, Plaintiff filed a Motion for Contempt because, among other things, Ms. Pagett had failed to pay him for his equity interest in the Cody Drive Residence. On July 6, 2004, the Ralls County Circuit Court issued an Order requiring Ms. Pagett to appear and show cause why she had failed to abide by the terms of the Judgment and Decree. Ms. Pagett was served with the Order to show Cause on July 14, 2004. See Allied's Exs. E, F, G, H.
   On July 16, 2004, the Cody Drive Residence burned.
   On December 22, 2004, Plaintiff and Ms. Pagett testified under oath in the Associate Circuit Court of Ralls County, Missouri, at a hearing on cross motions to modify and motions for contempt. See Allied's Ex. C. The testimony about to be cited was given during this hearing.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

> A: Correct.
> Q: Okay. You were of the opinion that Donna was involved in burning the house?
> A: Absolutely.
> Q: Okay. Are you still of that opinion?
> A: Absolutely.

Allied's Ex. D, p. 59. Allied argues that, among other things, the testimony from Plaintiff that Ms. Pagett, an insured under the Policy, caused the fire at the Cody Drive Residence demonstrates that it had a reasonable basis for refusing to pay Plaintiff's claim.[4]

In an attempt to defeat Allied's Motion for Summary Judgment, Plaintiff points to a single fact he alleges to be disputed between the parties. Specifically, Plaintiff states that there is a disputed fact as to whether the fire was set intentionally by Ms. Pagett. First, Plaintiff offers the testimony of Ms. Pagett, given during Allied's investigation of the insurance claim:

> Q: Let's go back to the fire and your knowledge of what occurred. Any idea how the fire started?
> A: No.

Pl.'s Ex. 2, p. 72.

> Q: Okay. And how did you come to know about the fire?
> A: I was in the house getting ready to leave, you know, getting the last stuff

---

[4] While Allied is correct in its assertion that Plaintiff's prior statements can be used as evidence in this matter, the Court notes that Plaintiff's prior statements constitute ordinary admissions that may be considered by the factfinder in this matter and not judicial admissions. "[J]udicial admissions are conclusive upon their maker," and are "binding for the purpose of the case in which the admissions are made including appeals." *State Farm Mut. Auto. Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir. 1968). However, "[t]his does not make the same judicial admissions conclusive and binding in separate and subsequent cases. *Id.* Indeed, "[t]he purpose of a judicial admission is that it acts as a substitute for evidence in that it does away with the need for evidence in regard to the subject matter of the judicial admission." *Id.* Thus, Plaintiff's statements from the December 22, 2004 hearing and his statements made during his Examination Under Oath taken during Allied's investigation of this matter are ordinary admissions which can be used as evidence in the instant case, but they are not binding judicial admissions. *See id.*

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

>    packed up and some lady pulled up and told my daughter, Joyce, and Bill that
>    our house was on fire.
> Q: Okay. And this is the house in Hull, Illinois?
> A: Yes. The lady pulled up at Hull and told us that the house on Cody was on
>    fire, that my neighbor, Bobby Tate, had called and told her.

Pl.'s Ex. 2, p. 79.[5] Second, Plaintiff offers his own sworn affidavit in which he states that Ms. Pagett, on numerous occasions, has denied intentionally causing the fire at the Cody Drive Residence. Pl.'s Ex. 1, ¶ 7. Plaintiff argues that, because the issue of whether Ms. Pagett set the fire is disputed, Allied is not entitled to judgment as a matter of law. Though not explicitly stated, Plaintiff's argument appears to be that: (1) there is a dispute as to whether Ms. Pagett started the fire, and (2) therefore, there is a disputed issue regarding whether Allied had a reasonable basis for refusing to pay Plaintiff's insurance claim.

Plaintiff's attempt to defeat Allied's summary judgment motion fails. In this case, Allied investigated Plaintiff's insurance claim. As part of its investigation, Allied examined both Plaintiff and Ms. Pagett under oath. Through this investigation, Allied learned that Plaintiff strongly believes that Ms. Pagett intentionally set the fire at the Cody Drive Residence. Allied also learned that Ms. Pagett denies that she intentionally set the fire. Indeed, the very evidence that Plaintiff presents in an effort to demonstrate that Allied did not have a reasonable basis for refusing to pay the claim, namely Ms. Pagett's testimony that she did not set the fire, was considered by Allied in the course of its

---

[5]In this same sworn testimony, Donna Pagett testifies as follows:
Q: Another standard question, did you have any involvement in setting the fire?
A: No.
Q: Did you have any involvement in having someone set the fire for you?
A: No.

Pl.'s Ex. 2, p. 85-86.

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

investigation. Moreover, as is evident from a discussion on the record which took place at the December 22, 2004 contempt hearing, law enforcement officials believe that the fire was the result of arson and, at that time at least, considered both Plaintiff and Ms. Pagett to be suspects. *See* Pl.'s Ex. C, pp. 5-6.[6] Further, the timing of the fire and Plaintiff's own emphatic insistence that Ms. Pagett set the fire gave Allied reason to believe that Ms. Pagett intentionally set the fire. It is clear that Allied had a reasonable basis for denying Plaintiff's claim under the Intentional Loss exclusion. *See, e.g., Mears*, 855 S.W.2d at 394-95 (insurance company's refusal to pay was reasonable in light of thorough investigation where physical evidence indicated plaintiffs had intentionally set the fire and only evidence that plaintiffs had not set the fire was plaintiffs' own statements to that effect; no

---

[6]At the beginning of the Contempt Hearing, the presiding judge and counsel for Plaintiff had the following discussion:

| | |
|---|---|
| THE COURT: | . . . As I understand it, the parties were divorced, they owned the home together. In the divorce, the divorce decree ordered that the home be sold or Ms. Pagett to pay so much money to Mr. Pagett. And before – In any event, that home has now been burnt and believed to be arson. |
| MR. BRANNON: | That is correct, Your Honor. |
| THE COURT: | And you are an Assistant Prosecuting Attorney in Ralls County. As far as te timing of your filing of the motions versus the alleged arson, would you state that for the record. |
| MR. BRANNON: | Yes, Your Honor. For the record, I filed my moiont, original Motion for Contempt – it was really a Motion for Contempt – in late May of 2004. The date the house burned down was July 16, 2004, at which time, I was representing Mr. Pagett in this matter, which was active. And we believe, as such, that there is no conflict that exists that would disqualify me. It is the Prosecutor of Ralls County's intention, that once the investigation has been completed on the alleged arson, that we will conflict that out to conflict the Prosecutor because of my status as representing Mr. Pagett and Mr. and Mrs. Pagett being alleged suspects in the matter under the law. |

Pl.'s Ex. C, pp. 5-6.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

evidence that refusal to pay was without reasonable cause). *Cf., e.g., United Fire and Cas. Co. v. Historic Preservation Trust*, 265 F.3d 722, 729 (8th Cir. 2001) (applying Missouri law) (evidence could support finding of vexatious refusal where insurance claims supervisor admitted she had no evidence linking insured to the fire; she knew state fire marshal and fire department had found no evidence insured set the fires; and she had failed to properly investigate). Plaintiff's proffered evidence, viewed in the light most favorable to Plaintiff, does not change this reality. In other words, Plaintiff's proffered evidence does not create a genuine issue as to any material fact because the issue here is not who set the fire at the Cody Drive Residence, but whether Allied had a reasonable basis for refusing to pay Plaintiff's claim. All of the evidence before the Court, taken in the light most favorable to Plaintiff, indicates that Allied did have a reasonable basis for refusing to pay, and Plaintiff has failed to present any evidence or meritorious argument to the contrary. Therefore, summary judgment in favor of Allied is warranted.

## IV.   CONCLUSION

Plaintiff has offered no evidence which refutes Allied's evidence that it did have a reasonable basis for refusing to pay Plaintiff's claim. Indeed, there is no evidence that Allied's refusal to pay was without reasonable cause. Because the Policy excludes coverage for intentional loss,[7] and because there is no genuine dispute that Allied had a reasonable basis for refusing to pay Plaintiff's claim,

---

[7]Allied states that its Intentional Loss exclusion is not ambiguous and that it is enforceable. Moreover, Allied points out that an innocent co-insured may not recover where the policy has an unambiguous exclusion barring recovery by an innocent co-insured. Plaintiff does not dispute these contentions, and the Court finds no reason not to enforce the Policy's plain language as it is written.

10

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Allied is entitled to judgment in its favor as to Plaintiff's single claim for vexatious refusal.[8]

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Allied Mutual Insurance Company's Motion for Summary Judgment [doc. #13] is **GRANTED**.

An appropriate Order of Judgment shall accompany this Order.

Dated this 4th day of August, 2006.

_E. Richard Webber_ (signature)

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

---

[8] In addition, the Court notes that, Plaintiff's proffered evidence suffers from an additional problem. Plaintiff has stated his belief that Ms. Pagett was responsible for intentionally setting the fire at the Cody Drive Residence. In addition, he has indicated, in sworn testimony, that he believes Ms. Pagett's testimony that she did not intentionally start the fire is untrue. Yet, now, Plaintiff wishes to offer Ms. Pagett's testimony as proof that she did not intentionally set fire to the Cody Drive Residence. In other words, Plaintiff wishes to advance his claim against Allied by using testimony he has already emphatically indicated is false. Because the Court has resolved this matter on other grounds, the Court need not reach the question of the admissibility of the proffered testimony.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com